IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BYFORD LANDERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Ronald A. Guzmán |
| v. | ) | |
| | ) | No. 04 C 7537 |
| THOMAS BANAS and | ) | |
| CITY OF JOLIET, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Byford Landery has sued Joliet police officer Thomas Banas and the City of

Joliet pursuant to 42 U.S.C. § 1983 alleging they violated his Fourth Amendment rights when he

was subjected to excessive force during his arrest. Defendants City of Joliet and Banas have

moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56, or, in the

alternative, to dismiss the complaint pursuant to Rule 12(b)(6). For the reasons stated in this

Memorandum Opinion and Order, the Court denies the motions.

## Facts

The following facts, some of which are hotly disputed, are viewed in the nonmovant's

favor. On November 20, 2003, at approximately midnight, Byford Landery called 911 because

he believed someone was breaking into or vandalizing his car parked outside of his house at 350

N. Ottawa, Joliet, Illinois. (Pl.'s LR56.1(b)(3)(B) ¶ 1.) When Joliet police officers Thomas

Banas and John Wilson arrived, they entered the house and repeatedly asked Phontella Landery

if her husband, Byford, had hurt her. (Id.) She repeatedly replied "no" and stated that she had

not called 911, but that her husband had. (Id.) When the officers tried to get her to sign papers,

she asked them why and stated that they should talk to her husband about why he had called the police. (*Id.* ¶ 2.)

As Byford offered the officers a seat at a table in the dining room to discuss why he had called 911, Officer Wilson told Byford he was under arrest for domestic battery. (*Id.* ¶ 3; Byford Landery Dep. at 19-20.) Officer Banas hit Byford in the back of the head with what he believed to be a flashlight because it was hard and it rattled. (*Id.*) He fell forward into Wilson, who then kneed him in the groin. (Byford Landery Dep. at 19, 24.) At that point, Byford was handcuffed with his hands behind his back. (*Id.*) Then three other officers joined Banas and Wilson and beat Byford. (*Id.* at 26.) One of them held a flashlight under his neck and lifted him up from behind while the other officers punched him. (*Id.*) After he was released from the grip of the officer holding the flashlight under his neck, he passed out, and when he came to, he saw his own blood, including a puddle of it on his dining room floor. (*Id.*)

The police charged Byford with aggravated battery and resisting a police officer. (Defs.' LR56.1(a)(3) ¶ 14.) After a trial, the jury acquitted him as to the aggravated battery charge and found him guilty of resisting a police officer. (*Id.*)

Apparently this was not Byford's first encounter with Banas. Although Byford did not recall at the time of the November 20, 2003 incident that he had met Banas previously, he states that Banas was the uniformed police officer who harassed him a couple of months prior to the November 20 incident while he was hosting a barbecue for family and friends. (Pl.'s LR56.1(b)(3)(C) ¶ 20.) Banas had asked if Byford had a permit to have a block party and commented that some of the children attending the barbecue did not look like Byford's relatives, presumably because they were Caucasian and Hispanic. (*Id.*) Banas also asked him if anyone had any guns or drugs at the party and stated that he was going to come in the house. (*Id.*;

2

Byford Landery Dep. at 36.) Byford told Banas that he would not allow him to come in the house because Byford did not call for his assistance, his neighbors had not complained about the party and Banas did not have a warrant. (Byford Landery Dep. at 36-37.) Another officer, who was sitting in the squad car, called for Banas, and then Banas told Byford, "I'm going to get you," and left. (*Id.* at 37.)

## Discussion

Defendants argue that summary judgment is appropriate solely based on *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).[1] Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, the court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In *Heck*, the Supreme Court held that a plaintiff could not bring a section 1983 claim when acceptance of the allegations supporting such a claim would "render a conviction or sentence invalid." 512 U.S. at 486-87. Therefore, when a plaintiff asserts such a claim, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply

---

[1]Although the City of Joliet also argues that summary judgment is appropriate based on *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the City failed to support its argument with any statement of fact in its LR56.1(a)(3) Statement, and thus the Court cannot grant summary judgment on that basis. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) (stating that failure to comply with the local rule is not a "harmless technicality" but a "mistake deemed . . . fatal").

the invalidity of his conviction or sentence." *Id.* at 487. If it would, the plaintiff must "demonstrate that the conviction or sentence has already been invalidated." *Id.* However, where a plaintiff could succeed on the section 1983 claim without undermining the criminal conviction, *Heck* does not bar the action, regardless of a valid conviction. *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998).

Byford's conviction for resisting a police officer still stands. (Pl.'s LR56.1(b)(3)(B) ¶ 14.) Therefore, if finding defendants liable for excessive force would necessarily imply the invalidity of his criminal conviction, *Heck* would bar Byford's claim.

However, a successful excessive force claim does not necessarily imply the invalidity of a conviction for resisting arrest. *See DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1117-18 (N.D. Ill. 1997); *Crooms v. Mercado*, 955 F. Supp. 985, 991 (N.D. Ill. 1997). *Cf. Bemben v. Hunt*, No. 93 C 509, 1995 WL 27223, at *3 (N.D. Ill. Jan. 23, 1995) ("Plaintiff properly notes that a conviction for resisting arrest is not conclusive with respect to Plaintiff's allegations of excessive force."). This is so because "it is possible for a finding that [the plaintiff in a civil rights case] was resisting arrest to coexist with a finding that the police used excessive force to subdue him." *Simpson v. City of Pickens*, 887 F. Supp. 126, 129 (S.D. Miss. 1995). "Excessive force used after an arrest is made does not destroy the lawfulness of the arrest." *Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001). "Hence, if [defendant] used excessive force subsequent to the time [plaintiff] interfered with his duty, success in her section 1983 claim will not invalidate her conviction." *Id.* For example, if the defendant police officer "had shot and wounded her instead of punching her while she stood handcuffed, there would be no doubt that she could sue him for violation of her civil rights." *Id.*

4

In *DuFour-Dowell v. Cogger*, the court held that a section 1983 plaintiff's criminal conviction for resisting arrest did not bar her excessive force claim against the arresting officers involving the same incident. 969 F. Supp. at 1118. The court reasoned that because the criminal jury did not specify which of her actions constituted the basis for a guilty verdict, the alleged excessive force could have occurred either before or after the criminal conduct of resisting arrest. *Id.*

Similarly, in this case, it remains unclear which of Byford's actions formed the basis for his conviction. The record is devoid of any evidence that would assist the Court in this regard. Viewing all disputed facts in Byford's favor, he was beaten after he was arrested and handcuffed with his hands behind his back. (Pl.'s LR56.1(b)(3)(B) ¶ 15.) Thus, even if Byford were able to prove his allegations of excessive force, it would not necessarily undermine the validity of his conviction for resisting a peace officer. *Heck* does not bar this action, and the Court denies defendants' motion for summary judgment. Because defendants' alternative motion to dismiss is also solely based on *Heck*, the Court denies that motion as well.

Although defendants rely solely on *Heck* and do not address the merits of Byford's excessive force claim, even a brief scan of the record shows that this case must proceed to trial. Claims that a law enforcement officer used unreasonable force are analyzed under the Fourth Amendment and its reasonableness standard. *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997). This standard looks to "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotations omitted). This fact intensive inquiry will depend on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

5

flight." *Id.* at 396. The court looks "at the circumstances the officer was confronted with not through the 20/20 vision of hindsight, but through the more immediate perspective of a reasonable officer on the scene." *Lanigan*, 110 F.3d at 475 (quotations omitted). Ultimately, the court must balance the intrusion into an individual's Fourth Amendment rights against the government's interest at stake. *Graham*, 490 U.S. at 396. The amount of justified force increases as a confrontation with a resisting offender increases. *Lanigan*, 110 F.3d at 475-76. Nonetheless, once an offender has been subdued, officers are not licensed to continue to beat an arrestee gratuitously. *Cf. Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) (punching handcuffed suspect, breaking his ribs, and pulling his hair cannot be objectively reasonable force in effecting an arrest).

The parties present diametrically opposed accounts as to how the events surrounding Byford's arrest unfolded. Defendants state that when the officers told Byford he was under arrest, he stated that he was ready to fight them. (Defs.' LR56.1(a)(3) ¶ 3.) According to defendants, when the officers attempted to place Byford under arrest, he began throwing punches and head butting Officer Banas and he hit his head on the dining room table and passed out. (*Id.* ¶ 4.) Byford states that after Officer Banas handcuffed him with his hands behind his back, despite the fact that Byford was not putting up a struggle, Officer Wilson kneed him in the groin and Banas, Wilson, and other officers began to beat him until he passed out. (Pl.'s LR56.1(b)(3)(B) ¶ 3.) Viewing all facts and drawing all reasonable inferences from those facts in Byford's favor, the Court concludes that a reasonable jury could find that Banas and the officers subjected Byford to excessive force after he had been handcuffed and subdued.

## Conclusion

For the foregoing reasons, the Court denies Banas and City of Joliet's motion for summary judgment, or in the alternative, to dismiss [doc. nos. 10-1, 10-2]. The parties shall be prepared to discuss a date for trial at the next status hearing.

**SO ORDERED**                    **ENTERED:**

SEP 1 4 2006

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States Judge**

7